**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

RANSOM GOODEN,     )
            )  Civil No. 3:10-cv-1059
       Plaintiff,  )
            )  **ORDER**
      vs.     )
            )
DOLGENCORP, INC., ET AL.,   )
            )
      Defendants.  )
_____ )

   This matter is before the court on defendant's motion for summary judgment.[1]

For the reasons stated below, the court grants defendant's motion.

## I.  BACKGROUND

   Plaintiff Ransom Gooden worked as a store manager at Dollar General from

January 2001 until June 2006.  Since his position was salaried, Gooden was not paid

additional wages based on over-time hours worked.  Gooden brings this suit under the

Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, for unpaid overtime

compensation.  Defendant Dolgencorp, Inc. (Dollar General) claims that it does not

owe Gooden overtime because he was an exempt employee pursuant to the

"executive exemption" provision of the FLSA.

   Dollar General is a retailer of basic consumable goods.  The store manager is

the most senior position assigned to a specific store, and no other position at the store

receives an exempt salary.  Dollar General store managers report to a district manager

who oversees a number of stores at the same time.  Dollar General operates its stores

---

[1] Dollar General Partners, Dolgencorp of New York, Inc., and Dolgencorp of Texas, Inc. do not join in this motion.  Defendants anticipate that the parties will enter stipulations dismissing these defendants.  Def.'s Mot. 1, n.1.

according to, among other things, certain standard operating procedures (SOPs). Store managers are evaluated on store performance and leadership skills, including: sales volume, inventory shrink, safety awareness, training and development, controllable expenses, customer satisfaction, and merchandising.

As store manager, Gooden performed numerous management duties. Gooden supervised, apportioned, and directed the employees as his store, Def.'s & Pl.'s SOF ¶ 52; Gooden Dep. 249:23-250:2 (2011); scheduled employees' hours, Gooden Dep. 164:23-165:9; ensured that his employees followed the SOPs, Gooden Dep. 66:9-19 (2005); enforced company personnel policies, Def.'s & Pl.'s SOF ¶ 29; reviewed and implemented directives from the corporate office, id.; conducted performance evaluations of the assistant manager, Gooden Dep. 164:10-22 (2011); counseled employees, id. 240:4-13; disciplined employees, id. 161:3-14; handled customer complaints in his store, Gooden Dep. 139:23-140:2 (2005); varied the inventory product mix based on his store's needs, Gooden Dep. 195:15-196:13 (2011); sought to ensure low shrink, id. 75:19-23; Gooden Dep. 133:10-21 (2005); Def.'s & Pl.'s SOF ¶ 28; and ensured financial integrity of the store via cash register accountability and key security, Def.'s & Pl.'s SOF ¶ 29. Gooden hired and trained approximately 73 people as a store manager. Gooden Dep. 243:22-244:2, 213:11-217:22 (2011); Def.'s & Pl.'s SOF ¶¶ 34-35. When an employee left, Gooden was responsible for recommending whether or not to rehire the individual. Gooden Dep. 238:10-239:25 (2011). Gooden also made requests to promote and demote key carriers, which his district managers granted. Id. 237:1-21. Gooden also performed numerous non-managerial tasks while he was managing his store.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Anderson, 477 U.S. at 255.  If evidentiary materials eliminate all factual disputes, summary judgment is appropriate on questions of law.  Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

## III.  DISCUSSION

The FLSA, 29 U.S.C. § 207(a), requires that an employee receive overtime pay if he works more than 40 hours in any workweek, but exempts executive employees from this overtime pay requirement.  The FLSA overtime exemptions are "affirmative defense[s] on which the employer has the burden of proof."  Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974).  The Department of Labor

has, for the relevant period, promulgated two sets of regulations interpreting the scope of the executive exemption, one of which was applicable prior to August 2004, and the other thereafter.  Since Dollar General employed Gooden as a store manager prior to and after these amendments, his claims are governed by both pre-2004 and post-2004 regulations.

Under the pre-2004 regulations, an employee was exempt under the executive exception when the employee earned more than $250 per week if (1) his primary duty consisted of the management of the enterprise and (2) included the customary and regular direction of two or more other employees.  29 C.F.R. § 541.119(a) (pre-2004).  The post-2004 regulations state that an exempt employee:  (1) is compensated at a rate of at least $455 per week; (2) has the primary duty of management; (3) customarily and regularly directs the work of two or more other employees; and (4) has the authority to hire or fire other employees or his suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.  29 C.F.R. § 541.100(a) (post-2004).

The parties have stipulated that both before and after August 2004, Gooden was paid over $455, which is over the pay threshold for an exempt employee.  The parties also agree that Gooden customarily and regularly directed the work of two or more other employees.  Gooden's opposition to defendant's motion for summary judgment did not specifically address the fourth requirement, the authority to hire or fire other employees.  The court will nonetheless address this issue, along with

whether Gooden's primary duty was management, in order to determine whether

Gooden falls within the executive exemption of the FLSA.

## A. Primary Duty

Management duties include:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

29 C.F.R. § 541.102(b) (2003). As described above, Gooden completed almost all of

these tasks at his stores.

The post-2004 regulations define "primary duty" as the "the principal, main,

major or most important duty that the employee performs. Determination of an

employee's primary duty must be based on all the facts in a particular case, with the

major emphasis on the character of the employee's job as a whole." 29 C.F.R. §

541.700(a) (2004). "To determine whether an employee's primary duty is

management, [courts should] look to the character of the employee's job as a whole,

focusing on five factors outlined by the pre-2004 regulations: (1) the amount of time

spent performing managerial duties; (2) the relative importance of these managerial

duties; (3) the frequency with which the employee exercises discretionary powers; (4)

the relative freedom from supervision; and (5) the relationship between the

employee's salary and nonexempt employees." In re Family Dollar Litig., 637 F.3d 508, 514 (4th Cir. 2011) (citing 29 C.F.R. § 541.103 (2003)).[2]

### 1. Amount of Time Spent Performing Managerial Duties

Under both the pre- and post- 2004 regulations, the court must analyze all of the factors, but the amount of time an employee spends on management versus non-management is a "useful guide" and a "good rule of thumb" to determine the employee's primary duty. 29 C.F.R. § 541.103 (2003); 29 C.F.R. § 541.700(b). "[T]he Fair Labor Standards Act, recognizing the nature of retail business, exempts retail executives from the requirement that the majority of their hours be spent on executive functions." Family Dollar, 637 F.3d at 515; 29 U.S.C. § 213(a)(1) ("[A]n employee of a retail or service establishment shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities."). Furthermore, "multi-tasking – doing management jobs while doing nonexempt work, is explicitly *recognized as a managerial duty* by the Department of Labor's regulations." Family Dollar, 637 F.3d at 516. Specifically, the regulations provide:

> [A]ssistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register.

---

[2] The Sixth Circuit has held that while the moving party must establish each element of an executive exemption, they need not establish every factor of the element for the element to be satisfied. Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 505 n.6 (6th Cir. 2007).

29 C.F.R. § 541.700(c) (2004).  See also Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 504 (6th Cir. 2007) ("[T]he time factor . . . might even be somewhat misleading where the employee's management and nonmanagement functions are [not] . . . clearly severable.").

Gooden initially claimed he spent 90% of his time performing non-managerial duties, but later said the number might be more like 75%.  Pl.'s SOF ¶ 28; Gooden Dep. 285:1-287:23 (2011).  He also testified that he was "at all times responsible [for the store,] and I'm still performing managerial duties."  Gooden Dep. 250:10-21 (2011), and explained that a "store manager is hired to lead."  Id. 115:17-19, 222:23-224:12.  He agreed that he was at all times operating his store, and that even when he performed non-managerial duties, he was doing what was in the best interest of the store.  Id. 250:19-251:18.  Gooden testified that doing what was in the best interest of his store often meant working on the floor, but could also mean meeting with a vendor or district manager, or coaching an employee.  Id. 250:14-251:18.  Specifically, he improved one of his stores by "Merchandise assortment.  Cleanliness of the store.  Customer service.  A number of things.  And the most important was the inventory was up, the sales improved."  Id. 117:3-10.  Another way Gooden observed that he improved his stores and specifically the store's performance in sales was by the manner in which he handled employees, addressed their attitudes, and increased morale.  Id. 118:10-15.

Gooden testified that when he became the store manager of one location, the store was in "bad shape," but when he "left there [four months later], and had that inventory, that was the best inventory they had in years."  Id. 107:18-108:10.  Gooden

explained that he was the primary person responsible for the turnaround in one of his stores. Gooden Dep. 89:1-12 (2005). He also distinguished himself from his assistant manager and third key, stating that they were not "ready to run a store just yet . . . because they don't have my retailing experience." Id. 72:1-15.

Based on Gooden's testimony, it is apparent that while Gooden was performing non-managerial tasks, he was concurrently performing his management duties – leading, overseeing, and improving his store. Furthermore, it cannot be rationally assumed that Gooden's store went without management 75-90% of the time. Whatever Gooden was doing, he did it to increase the overall success of his store and was "at all times" operating his store and responsible for it. According to the Fourth Circuit, this is the "goal of . . . managerial responsibility," and produces just the type of multitasking that the Department of Labor recognizes as a managerial duty. Family Dollar, 637 F.3d at 51-16; see 29 C.F.R. 541.700(c) (2004). Thus, this court finds that Gooden spent the great majority of his time performing management duties, whether he was solely performing management duties or performing them concurrently with non-management tasks.

### 2. Relative Importance of These Managerial Duties

As discussed above, Gooden chose to perform the tasks he believed would most improve the store he was managing. Gooden was at all times responsible for the operation of his stores, directing his employees, and apportioning tasks, and if he were not managing, there was no one else to do so. Family Dollar, 637 F.3d at 517. As Gooden explained, his assistant manager was not "ready to run a store." Gooden

Dep. 72:1-15 (2005).  The Fourth Circuit has held that this is evidence that managerial responsibilities were the most important.

Furthermore, Gooden recognized that he was responsible for implementing defendant's policies and procedures at the store level, and for managing, training, coaching, and motivating his employees.  Id. 222:23-223:23.  He also acknowledged that if he didn't hire, evaluate, counsel, and develop employees, make the schedule, and ensure that products were ordered, "the store would probably be a wreck."  Id. 223:11-23.  He predicted, "The sales wouldn't be where they should be.  Shrink would be out - - would be bad."  Id.[3]  He agreed that a store could not survive without a store manager and leader or even exist without someone to hire employees, make sure they showed up, and tell them what to do.  Id. 223:24-224:22.

If Gooden had failed to perform his non-managerial duties, his Dollar General store would still function, albeit less effectively.  Id. 225:1-24.  If, however, Gooden failed to perform his managerial duties, his store would not function at all because no one else would perform these essential tasks.  Based on similar facts, the Sixth Circuit in Thomas v. Speedway SuperAmerica, 506 F.3d 496, 505 (6th Cir. 2007), found that the plaintiff's "managerial duties were much more important to the [store's] success than [the] non-managerial duties," and thus, concluded that the plaintiff's most important duties were managerial.  See also Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1114-15 (9th Cir. 2001) (holding that managers of a recreational-vehicle park

_____

[3] Gooden also provided an example of what happens when a Dollar General Manager is not there by describing a store he took over, explaining that it was a "watched store," with the "Stockroom in a mess, overstocked. High shrink. Low employee morale."  Gooden Dep. 115:2-10 (2011).  Gooden attributed the poor condition of the store to the fact the store did not have a manager at the time.  "The assistant was acting, being in charge and certain things just wasn't getting done."  Id. 115:6-10.  Gooden believed this was a problem "[b]ecause there's got to be some leadership somewhere."  Id. 115:17-19.

were executive employees exempt from the FLSA and noting that the plaintiffs' "principal value to Trailer Inns was directing the day-to-day operations of the park even though they performed a substantial amount of manual labor"). If Gooden did not perform his managerial duties, the "store would be a wreck" and could not survive. Based on these facts, it is clear that Gooden's most important duties were managerial.

### 3. Frequency With Which the Employee Exercised These Duties

Gooden exercised discretion almost all day, every day. During his time as store manager, Gooden exercised discretion concerning whom to hire or recommend for rehire for all non-key carrying employees, which were the majority of employees at his store. Def.'s & Pl.'s SOF ¶¶ 34-35. Every time Gooden chose what to do, he opted for the task that he believed would most improve his store. No one told him what task was the most urgent, when to delegate, or how to prioritize duties and objectives. Gooden created all work assignments in his store, directed the work, and "had discretion to tell [his] clerks and [his] part timers what to do." Gooden Dep. 65:17-66:20, 100:13-17 (2005); Def.'s & Pl.'s SOF ¶ 66. While Gooden's district managers could note something that needed to be done in the store, Gooden chose whether to perform the task, or delegate it, whom to assign it to, and when it should be performed. Gooden Dep. 65:1-66:20 (2005). Gooden distributed the amount of work hours allotted to his store based on his observations of "traffic flow" and his assessment of the store's needs, and scheduled employees for these hours. Gooden Dep. 164:23-165:9 (2011). Gooden explained, "[The district managers] didn't dictate to me how I should do the schedule." Id. 165:6-9. Gooden used his own judgment to

determine which of his employees were performing below par and provided counseling or discipline, in addition to making performance evaluations of his assistant managers.  Def.'s & Pl.'s SOF ¶¶ 39, 64.  The fact that Gooden forwarded these evaluations to his district manager did not significantly detract from his discretion.  Furthermore, Gooden used discretion to recommend when to vary amounts of products delivered to his store.  Id. ¶ 32.

Gooden's discretion was rarely limited by his district managers. Gooden had four district managers during the time he worked at Dollar General.  His first district manager visited his store only once in a few months.  Gooden Dep. 151:24-153:15 (2011).  The next visited about two or three times in a five-month period, id. 151:24-153:15, the third visited about once every month to six weeks, id. 151:24-153:15, and the last district manager visited once every couple of weeks.  Id. 151:24-153:15.  The district manager visits lasted from thirty minutes to one hour.  Id. 156:13-16; Gooden Dep. 39:20-40:22, 41:13-42:16, 42:20-43:12 (2005).  Gooden received voicemails on a daily basis from the district managers, but spoke with district managers less than once a week.  Gooden Dep. 153:17-155:12; 155:19-156:12 (2005).

"[A]ctive supervision and periodic visits by a [district] manager do not eliminate the day-to-day discretion of the on-site manager."  Murray v. Stuckey's Inc., 50 F.3d 564, 570 (8th Cir. 1995).  Gooden's managers were much less "active" than those in other cases where courts found that a store manager's primary duty was management.  See, e.g., Speedway SuperAmerica, 506 F.3d at 506.  Since Gooden's managers were largely absent and not in contact with Gooden, he had almost total discretion in running his store.

Additionally, Dollar General's SOPs did not overly limit Gooden's discretion. 29 C.F.R. § 541.704 (2004) states, "The section 13(a)(1) exemptions are not available, however, for employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances." Notwithstanding extensive SOPs, courts have found that "[t]he supervision of other employees is clearly a management duty. The fact that [the employer] has well-defined policies, and that tasks are spelled out in great detail, is insufficient to negate this conclusion. Ensuring that company policies are carried out constitute[s] the very essence of supervisory work." Donovan v. Burger King, 672 F.2d 221, 226 (1st Cir. 1982) (finding that assistant managers whose tasks were "governed by highly detailed, step-by-step instructions contained in" the company manual that "admit of little or no variation" had management as their primary duty); see also Baldwin, 266 F.3d at 1115 ("[E]nsuring employee compliance with a management manual qualifies as supervision for the purposes of the regulations."). Furthermore, a company's "desire for standardization and uniformity" in its "multi-store organization" does not take away from the fact that a manager's primary duty is to manage his store. Murray v. Stuckey's Inc., 939 F.2d 614, 619 (8th Cir. 1991).

While Dollar General's SOPs are extensive, Gooden testified that the SOPs did not tell him what to do on a minute-to-minute basis, or how to prioritize simultaneous events. Gooden Dep. 169:13-170:19 (2011). Gooden used his own judgment to determine how to apportion tasks, hire non-key carrying employees, prioritize assignments and concerns, provide training on store policies, and ensure

that these policies were followed, <u>id.</u> 222:23-223:6, which is "the very essence of supervisory work." <u>Burger King</u>, 672 F.2d at 226. While Dollar General's policies furthered "standardization and uniformity" in its "multi-store organization," Gooden almost always exercised a high degree of discretion in his work.

### 4. Relative Freedom From Supervision

Gooden was free from supervision almost all of the time. He was the most senior employee at each of his stores, and all the other store employees answered to him. Gooden almost always operated his stores without a supervisor looking over his shoulder as his supervisors rarely visited. His district managers "didn't dictate . . . how [he] should do the [employees'] schedule," assign duties, direct work, prioritize tasks, or hire non-key carrying employees. Gooden Dep. 165:2-9 (2011). While Gooden was occasionally supervised, and his discretion was limited in some ways by the SOPs, the exemption only demands "'<u>relative</u> freedom from supervision;' it does not demand complete freedom from supervision." <u>Speedway</u>, 506 F.3d at 507 (holding that store manager was relatively free from supervision even when her district manager visited once or twice a week, communicated with the plaintiff frequently over the phone and email, and remained constantly available); <u>Horne v. Crown Cent. Petroleum, Inc.</u>, 775 F. Supp. 189, 191 (D.S.C. 1991). Gooden chose what tasks to accomplish, when to perform them, and if and to whom the tasks should be delegated on a daily basis.

### 5. Relationship Between the Employee's Salary and Nonexempt Employees' Pay

Courts consider "two items" when evaluating the relationship between the potentially exempt employee's salary and nonexempt employees' pay: "first, whether

the manager earned more, in absolute terms, than non-managerial employees, and second, whether the manager was a 'profit center,' namely, whether the manager had the ability to influence the amount of her compensation." Family Dollar, 637 F.3d at 517. Considering the amount of hours Gooden estimated he worked to determine his "hourly rate," Gooden was, "in absolute terms," paid more than his non-managerial employees. Gooden received approximately 9-34% per hour more than the assistant managers at his stores. See Pl.'s Opp. 9. In Family Dollar, the Fourth Circuit compared the store manager's salary to the "average employee." Gooden's second in command were certainly not "average employee[s]," however, even with the assistant managers as the sole basis of comparison, Gooden was unquestionably paid more.[4]

Additionally, Gooden was a profit center. In 2001, he could make up to 10% of the store profits as a bonus. Def.'s & Pl.'s SOF ¶ 24. In 2002 and 2003, Gooden was eligible to receive bonuses of up to $10,000 based on the store's performance in sales, shrink, markdowns, payroll, and inventory turn, and from 2004 to 2006, Gooden was eligible for up to $13,000 in bonuses. Id. At all times, Gooden's bonus eligibility was at least three to four times that of his assistant manager. Gooden received bonuses of $5,765 in 2004; $750 in 2005; and $4,066 in 2006. Id. ¶ 25. Any bonuses he received were determined based on his store's performance in sales, shrink, markdowns, payroll and inventory turn. Id. ¶ 24.

Gooden was at all times responsible for operating his stores, received additional compensation based on his store's performance, understood that the improvement of the store ultimately rested on him, and was free to choose the best

---

[4] Plaintiff argues the court should not consider the wages of the other employees at the Dollar General because they were part time. A comparison to these employees reveals a difference of 38-53% in pay.

methods to accomplish this goal.  Viewed as a whole, Gooden's testimony demonstrates that his primary duty was management.

### B.  Authority Concerning Employees' Change of Status

In order to qualify for the executive exemption, an employee must "ha[ve] the authority to hire or fire other employees or h[is] suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees [must be] given particular weight."  29 C.F.R. § 541.100(a) (post-2004). Gooden could hire all non-key carriers without approval of his district managers, and these were the vast majority of the positions at his stores.  In fact, Gooden hired approximately 73 employees when he was a store manager.  His recommendations to promote or demote key carriers were approved by his district managers.  Gooden Dep. 237:1-23 (2011).  Gooden never had to terminate an employee while he was a store manager, Gooden Dep. 52:10-53:17 (2005), however, since the regulations only require that an employee be able to hire "<u>or</u>" fire employees "<u>or</u>" their recommendations are given particular weight, Gooden's position satisfies this element.  Based on the foregoing, this court concludes that Gooden was an "exempt employee" under the FLSA, and Dollar General does not owe Gooden overtime compensation for the period of time he worked as a store manager.

### IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** defendant's motion for summary judgment.

**AND IT IS SO ORDERED**.

_____ _____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 3, 2012**
**Charleston, South Carolina**